**Edward Earl JOHNSON,**
**Petitioner-Appellant,**
**Cross-Appellee,**

v.

**Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Respondent-Appellee, Cross-Appellant.**

No. 86–4210.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1986.

Kenneth J. Rose, Barry H. Powell, R. Jesse Brown, Jackson, Miss., for petitioner-appellant, cross-appellee.

Marvin L. White, Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen., Amy D. Whitten, Asst. Atty. Gen., Jackson, Miss., William S. Boyd, III, Sp. Counsel, Gulfport, Miss., for respondent-appellee, cross-appellant.

Before CLARK, Chief Judge, REAVLEY, and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

Edward Earl Johnson appeals from the judgment of the district court denying his petition for writ of habeas corpus. He argues first that his death sentence was imposed on the basis of an unconstitutionally vague aggravating circumstance. Second, he contends that the state trial court unconstitutionally restricted his sentencing phase argument. Finally, he maintains that he was entitled at the guilt phase of his trial to an instruction on the lesser included offense of manslaughter. Finding these claims to be without merit, we affirm the judgment appealed from.

I.

Between 2:00 a.m. and 3:00 a.m. on June 2, 1979, Johnson broke into the house of an elderly woman, Sally Franklin, in Walnut Grove, Mississippi. Franklin testified that Johnson threatened to rape her. They struggled and Franklin offered Johnson money to let her go. She tried to escape but was knocked unconscious. When Carmen Dennis, a boarder at Ms. Franklin's home, heard the noise and came to investigate, Johnson fled. According to Johnson's statement, he got into his car and a police car arrived. The town marshal, J.J. Trest, got out and asked Johnson what he was doing. Johnson said "nothing" and got out his gun. Trest shined a flashlight into Johnson's car, and Johnson

jumped out and shot Trest three times in the body with a .25 caliber pistol. As Trest was falling, Johnson hit him in the head with the pistol and it flew out of his hand. Trest was groaning and moving on the ground, and Johnson took Trest's .357 magnum and shot Trest twice in the head. Although two of the shots to Trest's body would have been sufficient to kill him, the shots to the head were the cause of death. Medical evidence indicated that Trest likely would have remained conscious for 15 seconds after the shots to the head, and died several minutes later.

Johnson was convicted of capital murder for killing a peace officer acting in his official capacity. Miss.Code Ann. § 97–3–19(2)(a) (Supp.1985). The state trial court instructed the jury to consider two aggravating circumstances: the capital offense was committed while in flight after committing the crime of burglary or attempting to commit the crime of rape, *id.* § 99–19–101(5)(d), and the capital offense was especially heinous, atrocious or cruel, *id.* § 99–19–101(5)(h). The jury found that both aggravating circumstances were present and sentenced Johnson to death. On direct appeal the Mississippi Supreme Court affirmed. *Johnson v. State,* 416 So.2d 383 (Miss.1982). Johnson applied for leave to file a petition for writ of error coram nobis, which the Mississippi Supreme Court denied. *Johnson v. Thigpen,* 449 So.2d 1207 (Miss.1984). Then Johnson filed a petition for writ of habeas corpus, which the United States District Court denied. *Johnson v. Thigpen,* 623 F.Supp. 1121 (S.D.Miss.1985). Johnson appeals.

## II.

## A.

■ Johnson argues that the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague and overbroad. This argument is not procedurally barred. Johnson objected at trial to the sufficiency of the evidence in support of the aggravating circumstance, and the Mississippi Supreme Court reviewed the sufficiency on appeal. *Johnson v.*

*State,* 416 So.2d 383, 393 (Miss.1982). The United States district court addressed the constitutionality of this aggravating circumstance in ruling on Johnson's habeas petition. *Johnson v. Thigpen,* 623 F.Supp. 1121, 1137–38 (S.D.Miss.1985). Therefore, the merits of Johnson's claim are properly raised on this appeal.

■ Johnson relies on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality opinion), in which the United States Supreme Court reversed a death sentence based solely on a broad construction of a similar aggravating circumstance. *Id.* at 433, 100 S.Ct. at 1767. Georgia law defined as an aggravating circumstance that the crime "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga.Code § 27–2534.1(b)(7), *quoted in Godfrey,* 416 U.S. at 422, 100 S.Ct. at 1762. Godfrey had killed his wife and mother-in-law by shooting them with a shotgun following "extreme emotional trauma." Godfrey was involved in an ongoing fight with his wife in which his mother-in-law intervened. The blasts killed each of them instantly, and Godfrey afterwards acknowledged the heinous nature of his crimes. 446 U.S. at 433, 100 S.Ct. at 1767. Godfrey's death sentence was based solely on the "outrageously or wantonly vile" aggravating circumstance. The Court held that Godfrey's death sentence was unconstitutional because his "crimes cannot be said to have reflected a consciousness materially more 'depraved' than that of any person guilty of murder." *Id.*

After *Godfrey,* this Circuit faced a similar challenge to the Mississippi capital sentencing statute. In *Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), the court rejected the challenge. It held that Gray failed to show that "Mississippi has either adopted an open-ended construction of this factor or applied it in an open-ended manner." *Id.* at 1105. The Court stated that Gray could hardly con-

tend that molesting and murdering a three-year-old child was not especially heinous, *id.*, and the court noted that it could find no cases, with one arguable but dated exception, in which the Mississippi court had failed to limit its construction of the aggravating circumstance, *id.* at 1110–11.

### B.

Johnson argues that since *Gray*, the Mississippi Supreme Court has failed to apply its limiting construction of the especially heinous aggravating circumstance. We agree. In *Coleman v. State*, 378 So.2d 640 (Miss.1979), the Mississippi Supreme Court adopted a limiting construction of the especially heinous aggravating circumstance.

> What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—*the conscienceless or pitiless crime which is unnecessarily torturous to the victim.*

*Id.* at 648 (quoting *Spinkellink v. Wainwright*, 578 F.2d 582, 611 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979)) (emphasis added by Mississippi Supreme Court). The Court reaffirmed the construction in several recent cases. *See, e.g., Wiley v. State*, 484 So.2d 339, 353–54 (Miss.), *cert. denied*, — U.S. —, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986); *Jordan v. State*, 464 So.2d 475, 478 (Miss. 1985), *vacated on other grounds*, — U.S. —, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); *Mhoon v. State*, 464 So.2d 77, 84–85 (Miss. 1985). The Fifth Circuit in *Gray* relied on this limiting construction and the consistent application of it by the Mississippi Supreme Court in upholding the Mississippi capital sentencing scheme. 677 F.2d at 1105.

Since *Gray*, however, the Mississippi Supreme Court has not consistently applied its *Coleman* limiting construction. Several cases, while clearly involving a crime that was "torturous" to the victim, do not seem to involve the requisite "conscienceless-ness." For example, in *Cabello v. State*, 471 So.2d 332 (Miss.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), the Mississippi Supreme Court discusses the pain of dying by strangulation but does not demonstrate that the defendant intended to do anything more than gag the victim so he would not call for help. *Id.* at 349. Another example is *Caldwell v. State*, 443 So.2d 806 (Miss.1983), *rev'd on other grounds*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in which the defendant shot his robbery victim twice, but only after she screamed for help. *Id.* at 809.

Conversely, a number of cases that clearly involve a pitiless murder lack any significant physical or mental suffering by the victim. For example, in *Wiley v. State*, 484 So.2d 339 (Miss.1986), *cert. denied*, — U.S. —, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986), the court upheld a capital sentence in an ambush-type killing with extremely weak evidence as to whether the victim died instantly. *Id.* at 353–54. In *Booker v. State*, 449 So.2d 209 (Miss.1984), *vacated on other grounds*, — U.S. —, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985), the court found sufficient evidence to support the aggravating circumstance solely on the basis of a showing that Booker shot the victim in the head before the victim could turn and see him. The victim apparently suffered no mental anguish because he did not know he was about to be shot, and the court failed to mention any evidence of physical suffering. *Id.* at 213. Finally, in *Irving v. State*, 441 So.2d 846 (Miss.1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985), the only evidence of suffering was the fear suffered by the victim for the few seconds between the time the victim opened the door and the time the defendant pulled the trigger, killing the victim instantly. The court stated that the fact that the victim had died instantly was not determinative. Other cases "have focused on other elements besides torture or suffering, such as the fact that the killing was 'totally senseless' and committed upon a hapless, unarmed victim." *Id.* at 850. In effect, this statement of the rule does away with the requirement

that the killing be especially torturous to the victim.

Moreover, in no reported case has the Mississippi Supreme Court ever found the evidence insufficient to support the especially heinous aggravating circumstance. Indeed, the court has rejected several attempts to have it limit application of the aggravating circumstance. *See Wiley*, 484 So.2d at 352–54; *Edwards v. State*, 441 So.2d 84, 92 (Miss.1983). Several Mississippi Supreme Court justices argued in *Wiley:* "Every case is especially heinous, atrocious or cruel, or at least we refuse to vacate the findings which in the aggregate have so held." 484 So.2d at 359 (Robertson, J., concurring).

On these bases, we conclude that the Mississippi Supreme Court has not consistently applied its *Coleman* limiting construction of the especially heinous aggravating circumstance. The limiting construction we found in *Gray* had been adopted in *Coleman* appears now to be more honored in breach than observance.

## C.

The broad interpretation given the especially heinous aggravating circumstance by the Mississippi Supreme Court does not, however, make imposition of the death penalty in this case unconstitutional. To be constitutional under the Eighth Amendment, as applied to the states by the Fourteenth Amendment, the death penalty statute of a state must "circumscribe the class of persons eligible for the death penalty" at the definition stage and provide "an individualized determination on the basis of the character of the individual and the circumstances of the crime" at the selection stage. *Zant v. Stephens*, 462 U.S. 862, 878–79, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983) (emphasis omitted). The state's definition of the capital offense "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Id.* at 877, 103 S.Ct. at 2742. Due process imposes the same requirements. *Prejean v. Maggio*, 765 F.2d 482, 484 (5th Cir.1985).

The Mississippi capital sentencing scheme, even without a limiting construction of the especially heinous aggravating circumstance, meets these constitutional requirements. Mississippi limits capital murder to murders committed in eight situations: murder of a peace officer or fireman; murder committed while under sentence of life imprisonment; murder committed by use of an explosive device; murder committed for remuneration; killing committed in the course of burglary, kidnapping, arson, rape, and other sexual offenses; killing committed in the course of felonious abuse of a child; and murder of an elected official. Miss.Code Ann. § 97–3–19(2) (Supp.1985). This portion of the Mississippi statute is similar to the Texas statute upheld in *Jurek v. Texas*, 428 U.S. 262, 268–75, 96 S.Ct. 2950, 2954–58, 49 L.Ed.2d 929 (1976) (opinion of Stewart, Powell & Stevens, JJ.).

After a defendant has been convicted of a capital offense, the jury is required to weigh the statutory aggravating circumstances against the mitigating circumstances in deciding whether to impose the death penalty.[1] Miss.Code Ann. § 99–19–103

---

1. The statutory aggravating circumstances are as follows:

(a) The capital offense was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

(d) The capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of, or an at-tempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, aircraft piracy, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of section 97–5–39, or the unlawful use or detonation of a bomb or explosive device.

(Supp.1985). The jury must find at least one statutory aggravating circumstance to impose the death penalty. *Id* With the exception of the required weighing of the aggravating and mitigating circumstances, *see Stephens,* 462 U.S. at 873–74, 103 S.Ct. at 2740–41, this portion of the Mississippi statute is similar to the Georgia statute upheld in *Gregg v. Georgia,* 428 U.S. 153, 196–207, 96 S.Ct. 2909, 2936–41, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, Stevens, JJ.). In its entirety, the Mississippi statute is a hybrid of the Texas and Georgia statutes, superimposing one on the other.[2]

The structural differences between the Mississippi statute and the Georgia statute distinguish *Godfrey* from this case. Georgia does not narrow the class of persons eligible for the death penalty by defining specific classes of murders that are capital murder. *Gregg,* 428 U.S. at 196, 96 S.Ct. at 2936. Rather, the aggravating circumstances are the sole statutory narrowing mechanism. *Id.* at 196–97, 96 S.Ct. at 2936. Thus, in *Godfrey,* when the Georgia Supreme Court did not properly limit the "outrageously or wantonly vile" aggravating circumstance, there was indeed "no principled way to distinguish [Godfrey's] case, in which the death penalty was imposed, from the many cases in which it was not." 446 U.S. at 433, 100 S.Ct. at 1767. The Georgia court had failed to make the only statutory factor present in *Godfrey* a narrowing one. For that reason the broad construction of the aggravating circumstance by the Georgia Supreme Court resulted in the death sentence being unconstitutional.

■ No such failure exists in the present case. Even given Mississippi's broadened construction of the especially heinous aggravating circumstance, and ignoring the other aggravating circumstance found by the jury,[3] the Mississippi capital murder statute still narrows the class of persons eligible for the death penalty. In the present case, for example, Johnson was convicted of the murder of a peace officer acting in his official capacity. This element of a capital offense in Mississippi is a statutory aggravating circumstance in Georgia. Ga.Code § 27–2534.1(b)(8), *quoted in Godfrey,* 446 U.S. at 423 n. 2, 100 S.Ct. at 1762

(e) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(f) The capital offense was committed for pecuniary gain.
(g) The capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(h) The capital offense was especially heinous, atrocious or cruel.
Miss.Code Ann. § 99–19–101(5) (Supp.1985).

**2.** The Louisiana statute is similar. *See* La.Rev. Stat.Ann. § 14:30.A (West 1986); La.Code Crim. Proc.Ann. art. 905.3–.5 (West 1984).

**3.** The jury also found the aggravating circumstance that the capital offense was committed while in flight after committing the crime of burglary or attempting to commit the crime of rape. Miss.Code Ann. § 99–19–101(5)(d) (Supp. 1985). Consideration of this aggravating circumstance is problematic. Mississippi law requires the state supreme court to review whether the evidence supports the finding of a statutory aggravating circumstance. *Id.* § 99–19–105(3)(b). In reviewing the evidence supporting the second aggravating circumstance, the Mississippi Supreme Court characterized the aggravating circumstance as "to the effect that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." *Johnson v. State,* 416 So.2d 383, 393 (Miss.1982). This is an entirely different aggravating circumstance from the one found by the jury. *See* Miss.Code Ann. § 99–19–101(5)(e) (Supp.1985). Johnson argues that the failure to review prevents reliance on this aggravating circumstance. We need not decide whether use of the "to the effect" language indicated that the Mississippi Supreme Court really intended to say that it had reviewed the jury's action in finding the circumstance of flight after committing a crime, but inadvertently described its action in terms of the related statutory circumstance of avoiding arrest or escape. Assuming the worst, the failure of the Mississippi Supreme Court to review the proper aggravating circumstance is not constitutional error. *See Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984). Mere errors of state law are not cognizable on habeas review. *Id.,* 104 S.Ct. at 875. Our conclusion that Mississippi's broad construction of the especially heinous aggravating circumstance is not constitutional error makes it unnecessary to consider the harmless error argument.

n. 2. The definition of capital murder in Mississippi serves the same narrowing function as the parallel aggravating circumstance would in Georgia.

In fact, the Mississippi death penalty statute, as applied in this case, is indistinguishable from the Texas statute. In approving the Texas statute in *Jurek*, the Supreme Court recognized that, by defining capital murder narrowly, "in essence, the Texas statute requires that the jury find the existence of a statutory aggravating circumstance before the death penalty may be imposed." 428 U.S. at 270, 96 S.Ct. at 2955. As this court stated in *Welcome v. Blackburn*, 793 F.2d 672, 677 (5th Cir. 1986):

> By classifying first degree murder as including certain aggravating circumstances the state has narrowed the class of those subject to the death penalty as effectively as if it allowed a broader class to be convicted but then limited those within the broader class who could be sentenced to death to only persons whose crimes are accompanied by specific aggravating circumstances.

The Mississippi statute, unlike the Texas statute, provides the added protection of requiring proportionality review by the state supreme court. *Compare* Miss.Code Ann. § 99–19–105(3)(c) (Supp.1985) *with Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 878, 79 L.Ed.2d 29 (1984). *See Barclay v. Florida*, 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (plurality opinion); *Stephens*, 462 U.S. at 879–80, 103 S.Ct. at 2743. Thus, the Mississippi death penalty statute satisfies constitutional requirements despite the broad construction placed on the especially heinous aggravating circumstance by the Mississippi Supreme Court.[4]

■ We do not base this decision on the harmless error doctrine of *Stephens*, 462 U.S. at 884–91, 103 S.Ct. at 2746–50. *See Barclay*, 463 U.S. at 951 n. 8, 103 S.Ct. at 3425 n. 8. Mississippi's choice to apply a broadened construction to the especially heinous aggravating circumstance is not constitutional error. If the change in construction is an error at all, it is an error of state law that is not cognizable on habeas review. *Harris*, 104 S.Ct. at 875; *Barclay*, 463 U.S. at 957–58, 103 S.Ct. at 3428–29.

### III.

■ Johnson next argues that the trial court unconstitutionally restricted the scope of his sentencing phase argument. Johnson asserts that the trial court erroneously sustained several objections by the state. The trial court sustained several objections when Johnson argued that the statutory definition of capital murder was arbitrary and irrational because it made the murder of a police officer capital murder while other murders were only simple murder. The trial court sustained an objection when Johnson argued that the Ten Commandments forbade killing regardless of what the legislature provides. The trial court sustained an objection when counsel, while arguing that the jury would think about Johnson on his execution day, began to describe an execution. The trial court sustained an objection when counsel argued to the jury that "[y]ou can spare his life, or you can kill him." The trial court sustained an objection when counsel argued that the jury had found Johnson guilty only beyond a reasonable doubt, not beyond all doubt.

Johnson first asserts that by sustaining objections to these arguments the trial

---

**4.** *Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), is not inconsistent with this holding. The court in *Gray* held that Mississippi had adopted and applied a limiting construction of the especially heinous aggravating circumstance. *See id.* at 1105, 1110–11. It did not have to decide what the constitutional consequences would be if the limiting construction was not applied. *Welcome v. Blackburn*, 793 F.2d 672 (5th Cir.1986), and *Williams v. Maggio*, 679 F.2d 381 (5th Cir.1982) (Unit A) (en banc), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3533, 77 L.Ed.2d 1399 (1983), also are not inconsistent. These cases held that one valid aggravating circumstance was enough to support the death penalty. *Welcome*, 793 F.2d at 678; *Williams*, 679 F.2d at 390. Again, neither had to reach the significance of a broad construction of the especially heinous aggravating circumstance.

court denied him the opportunity to argue mitigating factors. He relies on *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion), which requires the state to allow the jury to consider all relevant mitigating factors. *Id.* at 608, 98 S.Ct. at 2965–66; *see also Skipper v. South Carolina,* — U.S. —, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982).

The considerations Johnson attempted to argue are not, however, mitigating factors within the meaning of *Lockett* and its progeny. Those cases hold that the jury must not be precluded from considering in mitigation "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964; *see also Skipper,* 106 S.Ct. at 1670–71; *Eddings,* 455 U.S. at 110, 102 S.Ct. at 874. *Lockett* expressly does not limit the "traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12. The purported irrationality of Mississippi's definition of capital murder, a description of an execution, and the issue of whether imposing a sentence of death is morally equivalent to killing do not bear on Johnson's character, prior record, or the circumstances of his offense. Because Johnson could not have presented evidence to the jury on these issues, the trial court did not commit constitutional error in refusing to let Johnson argue these matters as mitigating factors.

The statement in *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion), that "[i]t is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing," *id.* at 950, 103 S.Ct. at 3425, is not contrary to this conclusion. The court in *Barclay* was discussing how much discretion the jury constitutionally could be allowed. It did not hold that a defendant had a constitutional

right to make the arguments Johnson attempted to make here. The State did not bar consideration of the individual characteristics of Johnson and his crime. Johnson was allowed to argue the particular circumstances of his crime and all true mitigating factors. The restrictions on his argument did not violate the requirements of *Lockett.* *See Shriner v. Wainwright,* 715 F.2d 1452, 1456 (11th Cir.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984); *Harris v. Pulley,* 692 F.2d 1189, 1203–04 (9th Cir.1982), *rev'd on other grounds,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

■ Johnson also contends that the trial court unconstitutionally restricted his argument by not allowing him to respond to impermissible arguments made by the prosecutor. He asserts that he should have been allowed to respond to arguments by the prosecutor that diminished the jury's responsibility for imposing the death sentence. *See Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985); *see also Skipper v. South Carolina,* — U.S. —, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (Powell, J., concurring) (defendant must be allowed to rebut evidence and argument used against him). Johnson has never challenged the propriety of the prosecutor's argument as a separate ground of error, and he does not raise it as error before us. Thus, the only issue is whether Johnson was allowed to stress to the jury its responsibility in assessing the death penalty.

The record of the argument discloses the jury was told that it had discretion to impose or withhold the death penalty and should exercise that discretion responsibly. Sustaining one objection to Johnson's argument that the jury could spare his life or "kill him" did not affect the overall impact of the argument. The trial court previously over several state objections allowed Johnson to compare the jury to God. The trial court did sustain an objection to the argument that God's law is "Thou Shall Not Kill" on the basis that Johnson was

challenging the legislature's authority to impose capital punishment. However, Johnson was allowed to argue about the limitations of human beings in deciding who should live or die, to rely on the Ten Commandments, and to impress on the jury that they had a grave responsibility.

Finally, Johnson argues that he was not permitted to argue to the jury that it should consider any residual doubt it may have had about his guilt. The following is the entire excerpt from Johnson's argument dealing with residual or "whimsical" doubt:

> BY MR. BROWN [Counsel for Johnson]:
>
> Now, I also want to point out that there is no jury who is infallible. There is no jury who is infallible. Not any single juror was standing there that night and saw Mr. Trest when he got shot. There is nobody in this Courtroom can say with absolute certainty that this Defendant shot and killed Mr. Trest. Nobody knows that in this Courtroom, but this Defendant. He's the only one that knows it.
>
> BY MR. KILPATRICK:
>
> To which I object, Your Honor. This jury has returned a verdict of guilty of capital murder.
>
> BY THE COURT:
>
> I will let him make his argument. Over-ruled.
>
> BY MR. BROWN:
>
> Nobody knows it, in fact, if he is guilty. All right. But nobody actually knows it but that Defendant. There can't be. No jury can be infallible. No juror can say with absolute certainty that he, in fact, killed him.
>
> You listen to this evidence coming from the witness stand. There was discrepancies in the testimony. I think juror knows from that witness stand of witnesses coming from there, there were discrepancies, from both sides, of course. And with those discrepancies, now another thing, the Court allows you and permits you to bring back a verdict of guilty, if you feel that the State has proven a case beyond a reasonable doubt.
>
> But you notice, they never did say all doubt.
>
> BY MR. KILPATRICK:
>
> To which I object, Your Honor.
>
> BY THE COURT:
>
> Sustained.

Johnson maintains that this ruling deprived him of a constitutional right to argue to the jury that it should consider any remaining doubts they may have about his guilt in determining the appropriate punishment. This is incorrect. Because the same jury that imposed sentence also decided guilt, the jury could in fact have considered any residual doubt it may have had under the argument he was allowed to make. Johnson argued to the jury that it was not infallible and that a mistake would be impossible to correct. These arguments presented the substance of his residual doubt argument to the jury. Moreover, the trial court had just overruled a state objection to the portion of Johnson's residual doubt argument in which he argued that none of the jurors could be absolutely sure that he committed the murder. The trial court did not commit constitutional error in sustaining the state's second objection.[5]

In sum, when Johnson's argument is viewed as a whole, it is clear that he was allowed to urge the jury to make an individualized and responsible decision whether to impose the death penalty. The restrictions imposed on his argument, neither individually nor cumulatively, amounted to constitutional error.

---

5. The Supreme Court's opinion *Lockhart v. McCree,* — U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), is completely consistent with this conclusion. In *McCree,* while the Court concluded that defendants had an interest in a unitary jury because the jury would consider its residual doubts about the defendant's guilt, the court recognized that not all states allow defendants to argue residual doubt to the jury. *Id.,* 106 S.Ct. at 1769. While not expressly approving this limitation on argument, the opinion in *McCree* gives us no reason to question our approval of the moderate limitation disclosed by the facts of the present case.

## IV.

Johnson also contends that his conviction was obtained unconstitutionally because the state trial court failed to instruct the jury on the lesser included offense of manslaughter. *Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980). His habeas petition does not state the theory on which a manslaughter instruction would have been appropriate. Before the district court Johnson evidently argued that an "unlawful act" manslaughter instruction should have been given.[6] *See Johnson v. Thigpen,* 623 F.Supp. 1121, 1131 (S.D.Miss.1985). Before this court he argues that a "heat of passion" manslaughter instruction was required.[7] Both arguments are without merit.

Johnson never requested an unlawful act manslaughter instruction at trial. The only indication that the Mississippi Supreme Court considered the appropriateness of this instruction is its statement that "[t]here is absolutely no evidence that Trest sought to arrest or search appellant prior to the shooting." *Johnson v. State,* 416 So.2d 383, 387 (Miss.1982). The district court noted that "it is simply unclear as to whether the Mississippi Supreme Court relied upon the procedural default at trial or whether its brief reference to the lack of evidence regarding an illegal search or arrest constituted summary disposition on the merits regarding any 'unlawful act' theory of manslaughter." *Johnson,* 623 F.Supp. at 1132.

■ If the Mississippi Supreme Court relied on the procedural default, habeas review is barred. *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). To the extent the claim may not be procedurally barred it

nevertheless fails. "[D]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982) (emphasis in original). No evidence in the record indicates that Trest was acting unlawfully when he was shot. Mere speculation and conjecture are not sufficient to overcome the presumption that Trest was acting lawfully. *Cf. United States v. Bachner,* 706 F.2d 1121, 1125 (11th Cir.) (burden on defendant alleging Fourth Amendment violation to prove that search and seizure occurred and that it was unreasonable), *cert. denied,* 464 U.S. 896, 104 S.Ct. 247, 78 L.Ed.2d 235 (1983). An unlawful act manslaughter instruction was not required.

■ Johnson did request a heat of passion manslaughter instruction. The prosecutor objected to the instruction on the ground that there was no evidence to support it, and the trial court refused the instruction. Johnson did not testify at trial. His statement, which was introduced as evidence, did not mention an argument. The only other evidence of the shooting was a statement Johnson made to a trustee at the Leake County jail. The trustee testified that Johnson "just said that he ran up on the guy at Walnut Grove, and they got in an argument, and he shot him, and that was all." This evidence was not sufficient to require a heat of passion manslaughter instruction. Under Mississippi law, "[m]ere words, ... no matter how provoking, grievous or reproachful, are not sufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter." *Stevens v. State,* 458 So.2d 726, 731 (Miss.1984); *Gaddis v. State,* 207 Miss. 508, 42 So.2d 724, 726 (1949). The refusal of the instruction was not constitutional

---

6. Miss.Code Ann. § 97–3–31 (1972): "Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter."

7. Miss.Code Ann. § 97–3–35 (1972): "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter."

error. *Hopper,* 456 U.S. at 611–12, 102 S.Ct. at 2052–53.

## V.

■ After oral argument in this case, Johnson sought and was granted permission to add to his appeal the contention that the death penalty in Mississippi is applied unconstitutionally to blacks accused of killing whites. This issue currently is pending before the United States Supreme Court in *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) (en banc), *cert. granted,* —— U.S. ——, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), and *Hitchcock v. Wainwright,* 770 F.2d 1514 (11th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986). The district court in the present case held that Johnson was procedurally barred from raising this claim. *Johnson v. Thigpen,* 623 F.Supp. 1121, 1138 (S.D.Miss.1985). We agree.

Johnson did not raise the argument at trial or on direct appeal. On his application for writ of error coram nobis the Mississippi Supreme Court held the claim to be procedurally barred. *Johnson v. Thigpen,* 449 So.2d 1207, 1209 (Miss.1984). The issue was not so novel as to provide cause for his procedural default. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2910–11, 82 L.Ed.2d 1 (1984). Therefore, his claim is procedurally barred. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Even if we were to excuse Johnson's procedural default, his claim would fail on the merits under settled circuit precedent. *Evans v. McCotter,* 805 F.2d 1210 (5th Cir.1986); *Wicker v. McCotter,* 798 F.2d 155, 157 (5th Cir.1986); *Prejean v. Maggio,* 765 F.2d 482, 486–87 (5th Cir.1985).[8]

The judgment of the district court denying the writ of habeas corpus is affirmed and the stay of execution previously granted is vacated.

AFFIRMED, STAY VACATED.

---

**8.** Our disposition of this appeal makes it unnecessary to consider the issues raised by the state's cross appeal.