**Willie Lawrence CELESTINE, Petitioner-Appellant,**

v.

**Hilton BUTLER, Warden, Louisiana State Penitentiary, Angola, Louisiana, Respondent-Appellee.**

No. 87–4536.

United States Court of Appeals, Fifth Circuit.

July 18, 1987.

---

Millard C. Farmer, Atlanta, Ga., for petitioner-appellant.

J. Nathan Stansbury, Dist. Atty., Lafayette, La., for respondent-appellee.

ON APPLICATION FOR A STAY OF EXECUTION PENDING APPEAL AND FOR CERTIFICATE OF PROBABLE CAUSE

Before RUBIN, WILLIAMS and JOLLY, Circuit Judges:

PER CURIAM:

Willie Lawrence Celestine is under sentence of death and scheduled to be executed on July 20, 1987, by the State of Louisiana. He petitions the right to appeal in forma pauperis, for a certificate of probable cause to appeal, and for a stay of execution. The district court on July 16 denied the stay and the certificate and also denied the petition for habeas corpus on the merits. This petition is Celestine's fourth petition for habeas corpus in the state courts and his fourth under 28 U.S.C. § 2254.

### FACTS

Celestine was convicted of first degree murder and sentenced to death in December 1982. The Louisiana Supreme Court affirmed his conviction and sentence. *State v. Celestine,* 443 So.2d 1091 (La. 1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984).

Celestine filed his first petition for habeas corpus relief in November 1984, which the state district court and Louisiana Supreme Court denied. He then sought relief under 28 U.S.C. § 2254 in the United States District Court, and this also was denied in November 1984. This Court issued a certificate of probable cause to appeal, but we eventually denied his habeas corpus petition, and the United States Supreme Court denied certiorari. *See Celestine v. Blackburn,* 750 F.2d 353 (5th Cir.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985). During these proceedings Celestine was granted his first stay of execution.

Celestine filed his second habeas petition in state district court on September 9, 1985. His sole claim in the second petition was that jurors had been excluded from his panel because of their expressed inability as a matter of conscience to impose the death penalty. The state district court, the Louisiana Supreme Court, and the United States District Court all denied relief, and this Court denied the certificate of probable cause and dismissed the appeal. *See Celestine v. Blackburn,* No. 85–4665 (5th Cir., Sept. 23, 1985) (unpublished opinion). The United States Supreme Court denied certiorari on June 2, 1986. During these proceedings Celestine was granted his second stay of execution.

On September 9, 1986, Celestine filed his third petition in state district court, claiming that his death penalty resulted from racial discrimination because he was a black who murdered a white. The Louisiana district court and Supreme Court denied relief, but the United States District Court granted a stay of execution on September 15, 1986, that being the third stay granted Celestine. On April 22, 1987, the United States Supreme Court decided *McCleskey v. Kemp,* —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), which upheld the death penalty against a challenge identical to Celestine's because the challenge lacked a specific showing of racial discrimination. After *McCleskey,* the United States District Court dissolved its stay on June 11, 1987. The state district court thereafter on June 18 set Celestine's execution for July 20.

On July 13, 1987, twenty-five days after the execution date had been set for the fourth time, and only seven days before the scheduled execution date, Celestine's present counsel filed Celestine's fourth petition for post-conviction relief and writ of habeas corpus in the Louisiana district court. The state district court and the Louisiana Supreme Court denied relief on July 13 and 14, respectively. Celestine then filed the petition for writ of habeas corpus and a stay of execution in the Unit-

ed States District Court. This is the petition denied on July 16, 1987.

The issue before us is whether petitioner has made a sufficient showing to justify the granting of a certificate of probable cause to appeal and a stay of execution so that the appeal can be considered on the merits. We have stated the standard for reviewing an application for a stay of execution many times. In general, a court in deciding whether to issue a stay must consider:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir.1984); *O'Bryan v. Estelle,* 691 F.2d 706, 708 (5th Cir.1982), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Ruiz v. Estelle,* 666 F.2d 854, 856 (5th Cir.1982).

In a capital case, "while the movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e. the other three factors] weighs heavily in the favor of granting the stay." *O'Bryan v. McKaskle,* 729 F.2d at 993 (quoting *Ruiz v. Estelle,* 666 F.2d at 856.).

The standard for granting a certificate of probable cause under Fed.R.App.P. 22(b) is whether there has been a substantial showing of a denial of a federal right. *Steward v. Beto,* 454 F.2d 268, 279 n. 2 (5th Cir.1971).

In deciding whether the requirements have been met for the granting of a CPC and for a stay, obviously the merits of the habeas corpus claims must be considered to the extent necessary to determine if they are substantial. In this inquiry, the Court has the benefit of the comprehensive opinion of the United States District Court considering in detail all of the issues raised by petitioner and denying the petition for habeas corpus on the merits. In evaluating petitioner's claims for substantiality, we accept the conclusions of the district court given after thorough and scholarly consideration of each claim on the merits. We add only brief observations with respect to appellant's claims to establish justification for denial of a certificate of probable cause and a stay of execution.

## THE CLAIMS

Petitioner's seven claims which he asserts apply to his case are set out in detail in the opinion of the district court. We summarize them briefly:

1. A claim that a statutory aggravating circumstance for the death penalty which merely repeats an element of the capital offense violates the Constitution.

2. It is unconstitutional for the judge in instructions to the jury to lead the jury to believe that the ultimate responsibility of imposing the death sentence does not lie in the jury but lies elsewhere when under the law the ultimate responsibility actually does lie upon the sentencing jury.

3. It is a violation of the Constitution to fail to instruct the jury that it may assess a life sentence rather than the death penalty even though aggravating circumstances justifying the death penalty have been found.

4. 5. 6. These three claims are based upon the American Declaration of Rights and Duties of Man and the Charter of the Organization of American States. Those documents are used to assert a right in the petitioner to claim violation by imposition of the death penalty in a racially discriminatory manner, and two claims based upon the violation of those treaties by the use of a death-qualified jury.

7. The seventh claim is that the death penalty is a cruel and unusual punishment when it is applied in a racially discriminatory fashion.

## FIRST CLAIM

■ The first claim is based upon the so-called *Lowenfield* issue because the Supreme Court recently granted certiorari in *Lowenfield v. Phelps*, 817 F.2d 285 (5th Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987). In *Lowenfield* this Court followed the well established law of this Circuit that a statutory aggravating circumstance justifying the death penalty can be counted even though the same aggravation is part of the basic criminal provision establishing the capital offense. In the case of petitioner the factor is aggravated rape.

The jury found three aggravating factors of which aggravated rape was only one. Under Louisiana law any one of the three factors was enough to justify the death penalty. The jury was specifically instructed to this effect. It has been held specifically that when only one aggravating factor is required and two or more are found, holding one of the aggravating factors invalid does not void the death penalty. *Zant v. Stevens,* 462 U.S. 862, 875–89, 103 S.Ct. 2733, 2747–49, 77 L.Ed.2d 235 (1983). [Judge Rubin and Judge Williams continue to adhere to the dissenting opinion authored by Judge Randall in *Williams v. Maggio,* 679 F.2d 381 (5th Cir.1982) (en banc) but agree that this panel is bound by that decision as the law of the circuit and by the Supreme Court opinion in *Zant.*] The Supreme Court, in affirming the death sentence, said:

> The jury did not merely return a general verdict stating that it had found at least one aggravating circumstance. The jury expressly found aggravating circumstances that were valid and legally sufficient to support the death penalty.

*See also Moore v. Maggio,* 740 F.2d 308, 321 (5th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

The law also, as established by our decisions, is that an aggravating factor may also be one of the elements in the statement of the statutory capital offense. *Gray v. Lucas,* 677 F.2d 1086, 1104–05 (5th Cir.1982); *Wingo v. Blackburn,* 783 F.2d 1046 (5th Cir.1986). Thus, we hold in any event that the finding of aggravated rape as an aggravating factor is valid. We conclude a stay on this ground must be denied.

## SECOND CLAIM

■ The second claim is based upon the case of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1986). In *Caldwell* the Supreme Court ruled it violated the Constitution "to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of defendant's death rests elsewhere" when actually the final determination lies with the sentencer. 472 U.S. at 328, 105 S.Ct. at 2639. The short answer to the claim by petitioner in this case is that *Caldwell* was decided in June of 1985, yet was not made the basis of a claim by appellant either in his petition for habeas corpus in September 1985, or in his petition of September 9, 1986. Failure to raise this issue at an earlier time constitutes abuse of the writ, and the claim is barred. Rule 9(b), 28 U.S.C. foll. § 2254.

■ Even if this claim were not barred on this ground, we point out that, unlike *Caldwell,* there was no contemporaneous objection at the time of trial. Finally, since this is a death case, we do not rest our decision solely on these procedural barriers, for, examined for its substance, the claim lacks merit. The petitioner has singled out parts of the trial court instructions and the form of the jury verdict to attempt to establish that the jury was led to believe that its death verdict was but a recommendation. Read as a whole, however, the trial court's instructions lay any doubt to rest. The trial court in its instructions, as set out in detail in the district court's opinion, made clear to the jury that the jury was the final authority in deciding upon a death sentence or life imprisonment. In addition to the instructions quoted in the district court opinion, the record shows that the jury was told that it was the jury's "responsibility" to decide between the death sentence or life imprisonment. The jury was instructed "to determine" which sentence it would impose. Moreover, these

instructions were given only after closing arguments at the penalty phase in which the prosecutor exhorted the jury to impose the death penalty and defense counsel with equal eloquence contended that the jury should commit Celestine to jail for life, without benefit of parole or probation, so he could suffer a lifetime of remorse for his crime.

Celestine's sole basis for raising the issue concerning "recommendation" rather than final decision arose only because the form given to the jury for its verdict refers to "recommendation." This form results from the fact that the Louisiana statutes refer to the jury's power to sentence to death or life imprisonment "in accordance with the recommendation of the jury." La. Rev.Stat.Ann. § 14.30(C). But the very next section of the Louisiana Code of Criminal Procedure goes on to provide that the Court is required to sentence in accordance with the jury's binding "recommendation." La.Code Crim.Proc.Ann. art. 905.8. The jury was not, however, informed of the latter provision.

While it would have been preferable, certainly, for the judge in precise terms to point out that the jury's recommendation is binding at the time the word "recommendation" under the statute comes to the attention of the jury in the verdict form, a consideration of the entire record with respect to the instructions given the jury in this case makes it abundantly clear that the jury was informed that it was itself charged with the final authority to determine whether there would be a death sentence or a sentence for life.

## THIRD CLAIM

The third claim involves the life-option issue. A recent decision of this Court has re-emphasized that instructions to the jury during the penalty phase must inform the jury clearly of its option to return a verdict of life imprisonment even if it finds one or more aggravating circumstances. This holding is *Evans v. Thigpen*, 809 F.2d 239, 243 (5th Cir.1987). It is clear, as the district court opinion points out, that *Evans* did not create new law because a number of earlier decisions before the date of final petition for habeas corpus in this case had made clear the requirement that the jury be instructed about the option to require life imprisonment. *Spivey v. Zant*, 661 F.2d 464, 470 (5th Cir.1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495 (1982); *Chenault v. Stynchcombe*, 581 F.2d 444, 448 (5th Cir.1978).

In view of the established law this contention by petitioner was also properly dismissed by the district court on the ground of abuse of the writ for failing to raise the issue at an earlier time in an earlier petition. Rule 9(b), 28 U.S.C. foll. § 2254. Again, no contemporaneous objection was made to this alleged improper jury instruction, and under the established rule the claim must fail on this ground as well. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

Because this was a capital case, again the district court went ahead and considered the claim in detail on the merits, and denied it. Our study of the record confirms that conclusion. The jury was told that if they found aggravating circumstances beyond a reasonable doubt: "You *may* consider imposing the death sentence." The instruction went on to tell the jury that if it found aggravating circumstances it then had to also consider mitigating circumstances before it *decided* that a death penalty should be imposed. These instructions made it clear that the jury was not compelled to assess a death penalty even though it found aggravating circumstances.

## FOURTH, FIFTH AND SIXTH CLAIMS

The fourth, fifth, and sixth claims are all based upon the American Declaration of Human Rights and the Charter of the Organization of American States. The claim is that as treaties these international documents supersede Louisiana law under the supremacy clause. The claims, however, are based upon asserted racial discrimination and use of a death-penalty-qualified jury. How these issues are to be determined is settled under American con-

stitutional law. Not a single argument is advanced directed at proving that the United States in these international agreements agreed to provide additional factors for decision or to modify the decisional factors required by the United States Constitution as interpreted by the Supreme Court. The argument is ingenious but content is wholly lacking.

### SEVENTH CLAIM

■ Finally, the seventh claim renews a basic attack upon capital punishment as a cruel and unusual punishment under the Eighth Amendment and as read into the Due Process of Law Clause of the Fourteenth Amendment, but with the added claim that it is cruel and unusual because of racial bias. This claim is clearly disposed of in *McCleskey v. Kemp.* It adds nothing to the basic claim of constitutional violation by racial discrimination by implementing the death penalty. ·This claim clearly was not supported in this case under *McCleskey* because no showing of intent to discriminate or discrimination was made.

### CONCLUSION

This case was brought to us only on Friday, July 17. We have spared no effort in reviewing the record, but, despite our earlier familiarity with the case pursuant to our established procedure, Local Rule 8 and Fifth Circuit Internal Operating Procedure following that rule, we have been unable to decide the matter until today, Saturday, July 18. Under Louisiana law, a stay of execution for any period, however brief, would require scheduling yet another execution date, at least thirty days in advance. In order to avert yet another rescheduling, yet in order to assure that the petitioner would not be deprived of the opportunity to present his case to the Supreme Court, the Clerk of this court has communicated with the Clerk of the Supreme Court to alert that Court to the possibility that we might deny a stay today and to inquire whether the fact that a petition for a stay might in that event be presented to the Supreme Court on Satur-

day, July 18, or even Sunday, July 19, would prejudice its consideration. The Clerk of the Supreme Court has advised us that the Court has been fully informed of this possibility. We therefore GRANT the right to appeal in forma pauperis, DENY the certificate of probable cause to appeal, and DENY the stay of execution.

RIGHT TO APPEAL IN FORMA PAUPERIS GRANTED.

CERTIFICATE OF PROBABLE CAUSE TO APPEAL DENIED.

STAY OF EXECUTION DENIED.