Leslie LOWENFIELD,
Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden,
Louisiana State Penitentiary,
Respondents-Appellees.

No. 88–3252.

United States Court of Appeals,
Fifth Circuit.

April 12, 1988.

David Klingsberg, New York City, Nancy Marshall, New Orleans, La., for petitioner-appellant.

John Mamoulides, Dist. Atty., Gretna, La., William Guste, Jr., Atty. Gen., Baton Rouge, La., for respondents-appellees.

Before REAVLEY, JOHNSON, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Following the denial of habeas relief by the U.S. Supreme Court on January 13, 1988, the state court in which Lowenfield was convicted resentenced Lowenfield to be executed in the early morning hours of April 13, 1988.[1] Less than two full days before the scheduled execution, Lowenfield filed a second writ application in state court seeking relief on three grounds: (1) the trial court failed to give the jury proper guidance on the mitigating circumstances it could consider or the weight it should give to these factors in determining whether to impose the death penalty; (2) because one of the two statutory aggravating factors upon which the jury predicated its sentence was invalidated by the Louisiana Supreme Court on direct appeal and because inadmissible evidence was adduced by the state in support of that aggravating factor the sentence must be vacated; and (3) Lowenfield's present mental condition precludes the state from executing him.

The Louisiana Supreme Court denied habeas relief in summary fashion and at ap-

---

1. The factual and legal background of this case is fully described in the opinion of the Louisiana Supreme Court on direct appeal, 495 So.2d 1245 (La.1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), our opinion in which we ruled on Lowenfield's initial habeas application, 817 F.2d 285 (5th Cir.), *cert. granted,* — U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987), and the U.S. Supreme Court's decision reviewing our denial of habeas relief, — U.S. ——, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

proximately 5:00 p.m., some seven hours before the scheduled execution, Lowenfield filed his petition seeking habeas relief on these same claims in federal district court. The district court, following a brief hearing, denied all relief at 7:30 p.m. Petitioner then filed a notice of appeal in this court, along with motions for Certificate of Probable Cause (CPC) and for a stay of execution.

Although the district court denied relief on claims 1 and 2 above, on the ground that petitioner abused the writ, we do not reach this question but instead hold that petitioner has not made a substantial showing of the denial of a federal right and we deny CPC and a stay of execution.

### I.

The petitioner argues first that the trial court failed to give the jury adequate guidance on what mitigating circumstances it could consider and what weight it should attach to them. This claim is without merit. The trial court's charge left no room for doubt that the jury was entitled to consider any relevant mitigating circumstances it wished and could determine the weight to assign to each such factor.[2]

**2.** The court charged the jury in part as follows:

Even if you find the existence of the aggravating circumstance you must also consider any mitigating circumstances relative to counts one, three, and four of the indictment before you decide that a sentence of death should be imposed. The law specifically provides certain mitigating circumstances. They are:

(A) The offender has no significant prior history of criminal activity;

(B) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;

(C) The offense was committed while the offender was under the influence or under the domination of another person;

(D) The offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;

(E) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of a mental disease or defect or intoxication;

(F) The youth of the offender at the time of the offense;

In *Wilson v. Butler,* 813 F.2d 664 (5th Cir.), *reh'g granted,* 825 F.2d 879 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988), we considered the adequacy of a substantially identical charge by another Louisiana court and found that it passed constitutional muster. This is consistent with *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) in which the Court held that the Constitution does not require a state to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances. *Id.* at 873–81, 890, 103 S.Ct. at 2741–44, 2750. This claim is therefore rejected.[3]

### II.

Lowenfield next argues that because one of the two statutory aggravating factors found by the jury was later invalidated on direct appeal by the Louisiana Supreme Court and because inadmissible evidence was adduced by the state in support of that aggravating factor the death sentence must be vacated.

The jury found the following statutory aggravating circumstances:

(G) The offender was a principal whose participation was relatively minor;

(H) Any other relevant mitigating circumstance.

However, in addition to those specifically provided mitigating circumstances you may also consider any other relevant mitigating circumstance. You may consider any other relevant circumstances which you feel should mitigate the severity of the penalty to be imposed. The fact that you are given a list of aggravating and mitigating circumstances should not cause you to infer that the Court believes that any other circumstances do or do not exist. The law requires that the jury be given such a list in every case. Whether any aggravating or mitigating circumstances exist is a fact for you to determine based upon the evidence presented.

**3.** *Franklin v. Lynaugh,* 823 F.2d 98 (5th Cir. 1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987), in which the Supreme Court recently granted writs of certiorari, is only concerned with the procedure followed under the Texas death penalty scheme. We have no reason to believe that a decision in this case will have any effect on the Louisiana procedure.

(a) The victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant, or was an eyewitness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant.

(b) The offender knowingly created a risk of death or great bodily harm to more than one person.

The Louisiana Supreme Court found that the first aggravating circumstance—that the victim was a witness in a prosecution against the defendant—could not stand because the evidence was insufficient to support that finding.

■ The Louisiana Supreme Court found however that the other aggravating circumstance was well supported by the record. This determination is clearly supported by the record and is presumed correct. There has been no challenge to its validity as applied in this case.

Under Louisiana law, only one aggravating circumstance is needed for the jury to impose the death penalty. La.Code Crim. Proc.Ann. art. 905.3 (West Supp.1988). As we stated in *James v. Butler*, 827 F.2d 1006 (5th Cir.1987), however, "[t]he fact that an invalid statutory aggravating circumstance has been found does not constitutionally impair a death sentence under the Louisiana procedure where the jury has also found another aggravating circumstance which is supported by the evidence and is valid under the law and of itself suffices to authorize the imposition of the death penalty." *Id.* at 1013 (citing *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Celestine v. Butler*, 823 F.2d 74, 78 (5th Cir.1987), *stay denied,* — U.S. ——, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987)); *Welcome v. Blackburn*, 793 F.2d 672, 678 (5th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 825 (1987); *Glass v. Blackburn*, 791 F.2d 1165, 1173 (5th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987).

We addressed the second prong of petitioner's argument in our previous ruling on his initial habeas application. Petitioner argued that the state, by introducing the bill of information charging Lowenfield with harrassing the victim as a witness, rendered the trial fundamentally unfair.

■ We adhere to our original determination that the Louisiana Supreme Court had a solid basis for concluding that the admission of this evidence was harmless error. We agree with the Louisiana Supreme Court that "[t]he defendant was convicted of wiping out five members of a family, including a four-year old girl, in a fit of jealousy. Given the overwhelming enormity of the defendant's crime, it is inconceivable the additional evidence that the defendant was charged with making harassing phone calls could have prejudiced the defendant." 495 So.2d at 1258.

This claim has no merit.

### III.

Between Lowenfield's arrest and his trial, the Louisiana state court convened three separate sanity commissions to inquire into Lowenfield's sanity. At the first two hearings held on March 17, 1983, and February 16, 1984, the two physicians ordered to examine Lowenfield both found him sane and mentally capable to stand trial. At the third hearing on May 7, 1984, Drs. Cox, Arneson, and Shraberg testified that Lowenfield was competent to stand trial despite a paranoid personality disorder. Dr. Richeaux disagreed and testified that defendant's paranoia rendered him unable to assist counsel. After each hearing, the trial court found that Lowenfield was competent to be tried.

On April 11, 1988, Lowenfield filed a habeas petition in the state court claiming for the first time that his insanity precluded his execution; his federal habeas petition, filed today, traces the state petition. Lowenfield's claim is predicated on an affidavit executed by a clinical psychologist, Dr. Marc L. Zimmerman. Dr. Zimmerman stated that he met with Lowenfield on March 26, 1988, for approximately five hours and administered to him a test known as the "Minnesota Multiphasic Personality Inventory" (MMPI) as well as an

intelligence test and a reading ability test. He stated further that "on the basis of the interview and the MMPI, I have reached a preliminary conclusion, subject to further psychological testing, that it is highly probable that Mr. Lowenfield is suffering from paranoid schizophrenia." He also states that "as a paranoid schizophrenic Mr. Lowenfield's capacity to understand the death penalty would be impaired. Indeed, my clinical interview with Mr. Lowenfield indicated that he is currently unable to understand the death penalty." Finally, Dr. Zimmerman concluded that:

[I]t is essential that further evaluation be done to ascertain Mr. Lowenfield's mental status. This evaluation would probably take at least ten hours of psychological testing and clinical interviews, spread over several visits. Mr. Lowenfield's medical/psychiatric history must be obtained. Also, "objective" tests, such as the Clinical Analysis Questionnaire and the Millon Multi-Axial Inventory should be administered. Such tests would permit comparison of Mr. Lowenfield's responses to standard questions with those given by persons diagnosed with schizophrenia, in order to determine with greater certainty the origin of Mr. Lowenfield's mental illness. A full evaluation will also require the use of "projective" tests, such as the Rohrschach and Thematic Apperception Tests, in which Mr. Lowenfield would be presented with ambiguous visual images and asked what he sees in them in order to learn more about his mental processes and emotions.

The Supreme Court in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) held that the eighth amendment bars execution of insane prisoners. Justice Marshall, in his plurality opinion, gives us some insight into the type of mental disorder a prisoner must suffer to be afforded this protection. Justice Marshall suggests that this relief depends on whether the prisoner "comprehend[s] the nature of the penalty" and whether the prisoner's mental illness "prevents him from comprehending the reasons for the penalty or its implication." *Id.* at 399, 106 S.Ct. 2595, 91 L.Ed.2d 335.

The plurality opinion was made a majority by the concurring opinion of Justice Powell. In that opinion, Justice Powell articulates with more particularity the class of prisoner entitled to this eighth amendment protection:

If the defendant perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied, and only if the defendant is aware that his death is approaching can he prepare himself for his passing. Accordingly, I would hold that the eighth amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it.

*Id.* at 422, 106 S.Ct. at 2608–09, 91 L.Ed.2d at 354 (Powell, J., concurring in the judgment).

■ Dr. Zimmerman's affidavit does not present the substantial threshold showing that Lowenfield falls within the above-defined class of mentally deranged prisoners so that due process requires that he be afforded a hearing. Justice Powell noted that:

[I]n order to have been convicted and sentenced, petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court. The State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a *substantial threshold showing* of insanity merely to trigger the hearing process.

*Id.* at 425–26, 106 S.Ct. at 2610, 91 L.Ed.2d at 356–57 (Powell, J., concurring in the judgment) (emphasis added).

Dr. Zimmerman's preliminary conclusion that Lowenfield is suffering from paranoid schizophrenia falls woefully short of a finding that Lowenfield is so deranged that he is unaware that he is about to be put to death as a result of his earlier conviction and sentence for murder. Because the petitioner has not made a substantial threshold showing that he can produce evidence that his mental infirmities are so severe as to meet the above standard we conclude

that no hearing was required. Thus, the State of Louisiana did not deprive Lowenfield of due process when it refused to convene a sanity commission, under La. Code Crim.Proc.Ann. arts. 642, 643 (West 1981). Similarly, the federal habeas court was not compelled by due process concerns to grant a hearing. The district court correctly rejected habeas relief on this claim.

In conclusion, Lowenfield has failed to make a substantial showing of the denial of a federal right; consequently we deny a certificate of probable cause and also deny a stay of execution. *See Barefoot v. Estelle,* 463 U.S. 880, 883, 103 S.Ct. 3383, 3389, 77 L.Ed.2d 1090 (1983).

The mandate shall issue forthwith.

JOHNSON, Circuit Judge, dissenting:

In his chief claim for habeas corpus relief in this capital case, Leslie Lowenfield asserts that he is presently incompetent to be executed under the dictates of *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

Lowenfield's federal habeas corpus petition was filed with the district court in the early evening. The district court denied the petition by 7:15 p.m.; it was received by this writer at 8:00 p.m. The district court, incredibly, appears to have relied upon an extended private conversation with Lowenfield's expert witness Marc L. Zimmerman, Ph.D., *before* the time Lowenfield filed his habeas petition in federal court. The court's opinion recited "My extended conversation with Dr. Zimmerman has convinced me that petitioner has the capacity to understand the realities of the pending execution."

In his application to this Court for a certificate of probable cause, Lowenfield represents that

> the District Court, flouting the most elementary concepts of due process, rested its factual finding that Mr. Lowenfield is not incompetent to be executed under *Ford v. Wainwright,* 477 U.S. 399 [106 S.Ct. 2595, 91 L.Ed.2d 399] (1986), upon an "extended" private conversation it initiated with Mr. Lowenfield's expert witness, although the expert's sworn affida-

vit accompanied the habeas corpus petition. Consequently, the District Court's ruling is based in part upon a hearing at which Mr. Lowenfield's rights to redirect or cross-examine witnesses, to be represented by counsel, or to be provided a record of proceedings, were all effectively nullified. Moreover, at the time the secret conversation was held, the District Court lacked any jurisdiction over the case because no petition had been filed there.

As Lowenfield points out, the district court gathered this "evidence" before acquiring jurisdiction over the case and without giving Lowenfield notice or an opportunity to respond. Moreover, it is clear from the district court's opinion that the court's conversation with Dr. Zimmerman was crucial to the court's resolution of the issue. Without the improper Zimmerman conversation, the entire record on the incompetence to be executed issue consists of the Zimmerman affidavit. Had the district court considered only that affidavit, it could have found that Lowenfield was incompetent, for Dr. Zimmerman there stated that Lowenfield is a paranoid schizophrenic and does not understand the death penalty that is to be imposed on him. The State presents no counter evidence. By basing its opinion on evidence outside the record, the district court failed to make any finding *on* the record. I cannot say, as a matter of law, that the Zimmerman affidavit[*] was insufficient to support a finding that Lowenfield met at least the threshold requirements for a hearing. Accordingly, I would grant a stay and remand for the district court to make a finding, based on record evidence, on whether Lowenfield should have a hearing on incompetence to be executed.

APPENDIX

AFFIDAVIT OF MARC L. ZIMMERMAN, Ph.D.

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

MARC L. ZIMMERMAN, Ph.D., being first duly sworn, says as follows:

---

[*] See attached appendix setting forth the Zimmerman affidavit in its entirety.

1. My name is Marc L. Zimmerman, Ph.D. I am currently a clinical psychologist in private practice in Baton Rouge, Louisiana. I have been in private practice since 1980.

2. I received my training in clinical psychology at East Texas State University, from which I received my Ph.D. in psychology in 1977. I have been licensed to practice in Texas since 1978, and in Louisiana since 1979. I have been certified by the Council for the National Register of Health Service Providers in Psychology, and I am a Diplomat of the American Academy of Behavioral Medicine. I am a member of the American Psychological Association and the American Society of Clinical Hypnosis.

3. I have been a practicing psychologist since 1978, and have practiced in Louisiana since 1980. From 1977 to 1978, I was Director of the Angelina County (Texas) Mental Health Clinic. In 1978, I joined the Baton Rouge Mental Health Center as Chief Psychologist, in which position I remained until entering private practice in 1980.

4. I personally interviewed Leslie O. Lowenfield on March 26, 1988 for approximately five hours, and administered to him a standardized psychological test known as the "Minnesota Multiphasic Personality Inventory ('MMPI')," as well as an intelligence test and a reading ability test.

5. On the basis of the interview and the MMPI, I have reached a preliminary conclusion, subject to further psychological testing, that it is highly probable that Mr. Lowenfield is suffering from paranoid schizophrenia.

6. A study has found that 85% of persons who obtain the same profile as Mr. Lowenfield on the MMPI are diagnosed as paranoid schizophrenics. Marks, P.A., & Seeman, W. *The Actuarial Description of Abnormal Personality.* Baltimore: William and Wilkins, 1963.

7. The clinical profile revealed by the MMPI indicates that Mr. Lowenfield is likely to be afflicted with delusions that he is being unjustly persecuted. He is likely to react to environmental stimuli, including social contacts with other people, with extreme and inappropriate hostility and suspicion. He may have difficulty in concentrating his thoughts, and will typically respond even to minor frustrations with excessive emotion. He may also suffer from hallucinations.

8. As a paranoid schizophrenic, Mr. Lowenfield's ability to distinguish right from wrong with respect to the conduct in question would have been impaired.

9. His paranoid schizophrenia may have caused Mr. Lowenfield to irrationally resist attempts to evaluate his mental status through the use of objective psychological tests.

10. As a paranoid schizophrenic, Mr. Lowenfield's ability to knowingly, voluntarily and intelligently waive his right to present evidence of his insanity at the guilt and sentencing stages of his trial, or in subsequent proceedings for collateral relief, would have been impaired.

11. As a paranoid schizophrenic, Mr. Lowenfield's ability to understand the proceedings against him or to assist in his defense would have been impaired.

12. Mr. Lowenfield's paranoid schizophrenia would constitute a pertinent mitigating circumstance under La.Code Crim. Proc. art. 905.5, such that a lay jury would be assisted by the testimony of a psychological witness in deciding whether or not to impose the death sentence.

13. As a paranoid schizophrenic, Mr. Lowenfield's capacity to understand the death penalty would be impaired. Indeed, my clinical interview with Mr. Lowenfield indicated that he is currently unable to understand the death penalty.

14. For these reasons, it is essential that further evaluation be done to ascertain Mr. Lowenfield's mental status. This evaluation would probably take at least ten hours of psychological testing and clinical interviews, spread over several visits. Mr. Lowenfield's medical/psychiatric history must be obtained. Also, "objective" tests, such as the Clinical Analysis Questionnaire and the Million Multi-Axial Inventory

should be administered. Such tests would permit comparison of Mr. Lowenfield's responses to standard questions with those given by persons diagnosed with schizophrenia, in order to determine with greater certainty the origin of Mr. Lowenfield's mental illness. A full evaluation will also require the use of "projective" tests, such as the Rohrschach and Thematic Apperception Tests, in which Mr. Lowenfield would be presented with ambiguous visual images and asked what he sees in them in order to learn more about his mental processes and emotions.

15. Because certain types of brain lesions or trauma can produce symptoms similar to those produced by paranoid schizophrenia, tests of psycho-organicity should also be administered, such as the Bender Gestalt and the Benton Visual Retention Tests, possibly supplemented by a Positive Emission Tomography Scan.

FURTHER AFFIANT SAYETH NOT.

/s/Marc L. Zimmerman, Ph.D.
Marc L. Zimmerman, Ph.D.

