**Edward R. BYRNE, Jr., Plaintiff-Appellant,**

v.

**Charles ROEMER, William J. Guste, Jr., Cecil P. Campbell II, Robert Hilton Butler, and Bruce N. Lynn, Defendants-Appellees.**

No. 88–4399.

United States Court of Appeals, Fifth Circuit.

June 13, 1988.

Rebecca Hudsmith, Shreveport, La., Nancy A. Baumgartner, Amanda Potterfield, Patrick R. Grady, Richard E. Kiausner, Cedar Rapids, Iowa, for plaintiff-appellant.

Henry N. Brown, Jr., Dist. Atty., Benton, La., Dale C. Wilks, Asst. Atty. Gen., New Orleans, La., for defendants-appellees.

Before RUBIN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Edward R. Byrne, Jr. moves this court for a stay of execution pending his appeal of a federal district court's decision to deny him an injunction in a section 1983 action. In his section 1983 action, Byrne challenged the constitutional validity of a Louisiana statute which, when applied to him, requires that he be executed before the time expires in which he can seek review in the United States Supreme Court of an earlier decision from this court; in that earlier decision, we denied Byrne's request for a certificate of probable cause to appeal from a district court's denial of his petition for a writ of habeas corpus. Because we conclude that Byrne has not demonstrated that the district court abused its discretion when it denied his request for an injunction, we deny Byrne's request for a stay of execution.

I.

Edward R. Byrne, Jr. ("Byrne"), a state prisoner under a sentence of death for first degree murder, is scheduled to be executed in Louisiana on Tuesday, June 14, 1988. His conviction and sentence were imposed in 1984; both were upheld by the Louisiana Supreme Court, *State v. Byrne,* 483 So.2d 564 (La.1986), and the United States Supreme Court denied his petition for writ of certiorari, *Byrne v. Louisiana,* —— U.S. ——, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986). Once the direct appeals of his conviction and sentence were complete, Byrne turned his attention to his post-conviction civil remedies. His only attempt to secure state habeas relief, however, proved unsuccessful. Consequently, on January 16, 1987, Byrne petitioned the United States District Court for the Western District of Louisiana for federal habeas relief. On January 17, the district court entered an order staying Byrne's execution pending resolution of his federal habeas petition. In September, the district court denied Byrne's petition; at the same time, the court continued the stay of execution it had entered in January until all appeals concerning Byrne's petition for federal habeas relief were resolved. Byrne, therefore, filed a timely notice of

appeal and applied to the district court for a certificate of probable cause to appeal. In October, the district court denied Byrne's application. As his next move, Byrne brought his request for a certificate of probable cause to this court. In an opinion dated May 9, 1988, however, we found that Byrne had failed to make a substantial showing of the denial of a federal right and, consequently, denied Byrne the certificate he requested. *Byrne v. Butler*, 845 F.2d 501, (5th Cir.1988). In addition, we concluded that Byrne had failed to make the kind of showing necessary to support the stay of execution which the district court granted; therefore, at the request of the State of Louisiana, we vacated the stay. On June 2, 1988 we denied Byrne's request for a stay pending disposition of a petition for rehearing and pending disposition of any petition for certiorari for which Byrne might apply. On the same day, we denied Byrne's petition for rehearing. Byrne has not, so far, sought relief from our recent decision in the United States Supreme Court.

In Louisiana, a state statute ("the Louisiana statute") partially determines the date of execution when an order from a federal court staying the execution of a state prisoner is dissolved. According to the Louisiana statute:

If any federal or Louisiana court grants a stay of execution, or if the governor of Louisiana grants a reprieve, the trial court shall reset the execution date at not less than thirty days nor more than forty-five days from the dissolution of the stay order, or termination or expiration of the reprieve.

La.Rev.Stat.Ann. § 15:567 (West Supp. 1988). Following the directive of the Louisiana statute, on May 10, 1988, a Louisiana state district judge set June 14, 1988—thirty-six days from the date on which this court dissolved Byrne's stay—as the date on which Byrne is to be executed. Faced with this new execution date and the Louisiana statute pursuant to which it was entered, on June 6, 1988, Byrne began to pursue relief through a new avenue. In the United States District Court for the Western District of Louisiana, Byrne filed the civil rights action which is before us today; brought pursuant to 42 U.S.C. § 1983, Byrne's complaint named as defendants the Governor of the State of Louisiana, the Attorney General for the State of Louisiana, the district judge who set the June 15 execution date, the Warden of the Louisiana State Penitentiary in which Byrne is incarcerated, and the Secretary of Louisiana's Department of Public Safety and Corrections.

In his complaint, Byrne charged that the Louisiana statute, as applied to him, operates to deny him the due process of law which the fifth and fourteenth amendments to the United States Constitution guarantee, the equal protection of the laws which the fourteenth amendment guarantees, and the access to the courts which both the first amendment and the privileges and immunities clause of article IV of the Constitution guarantee. Byrne's reason: Under 28 U.S.C. § 2101(c), Byrne has ninety days in which to file an application with the United States Supreme Court for a writ of certiorari to review our recent decision in his federal habeas suit. According to Byrne, since the Louisiana statute requires that Byrne be executed before the ninety-day time period expires, the statute is unconstitutional—it denies Byrne due process and access to the courts because it unduly abrogates the time in which Byrne can exercise his federally established right of review, and it denies Byrne equal protection because it treats habeas petitioners with a death sentence differently from other habeas petitioners without having a compelling reason or rational basis for doing so. As relief from the allegedly unconstitutional effects of the Louisiana statute, Byrne requested preliminary and permanent injunctions which would enjoin the defendants from executing Byrne until the ninety-day time period permitted by 28 U.S.C. § 2101(c) expires.

On June 9, 1988, the district court issued a ruling in which it evaluated Byrne's section 1983 claim. In a detailed, nine page memorandum, the court weighed the merits of each of Byrne's constitutional challenges and explained why, in each case, the

Louisiana statute did not infringe upon Byrne's constitutional. rights. In a separate order entered the same day, therefore, the district court denied Byrne the preliminary injunction he requested. Having met this, his latest defeat, only five days before he is scheduled to die, Byrne now asks this court to grant him a stay of execution so that he can appeal the district court's adverse decision. However, because Byrne has not shown that he is likely to succeed on the merits of his section 1983 claim—or even that his section 1983 claim presents a serious legal question—we cannot grant Byrne the stay he requests.

## II.

In deciding whether to issue a stay of execution,[1] as we have recognized many times before, we are required to consider four factors:

> "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest."

*Streetman v. Lynaugh,* 835 F.2d 1521, 1524 (5th Cir.1988) (quoting *Brogdon v. Butler,* 824 F.2d 338, 340 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 13, 97 L.Ed.2d 802 (1987)); *accord Celestine v. Butler,* 823 F.2d 74, 77 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987); *O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir.1984); *Ruiz v. Estelle,* 666 F.2d 854, 856 (5th Cir.1982). While, under this standard, " 'the movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e. the other three factors] weighs heavily in the favor

of granting the stay.' " *Celestine,* 823 F.2d at 77 (quoting *O'Bryan,* 729 F.2d at 993); *accord Streetman,* 835 F.2d at 1524; *Brogdon,* 824 F.2d at 340; *Ruiz,* 666 F.2d at 856. We therefore evaluate the probability that, if we stay Byrne's execution, Byrne will ultimately succeed in proving that the district court erred in denying him the preliminary injunction he requested.

Because "[t]he law is well-settled that the grant or denial of injunctive relief rests in the sound discretion of the trial court," Byrne can succeed on appeal only by proving that, in refusing to preliminarily enjoin the defendants from executing Byrne within the ninety-day period in which he can file a petition for certiorari, the district court abused its discretion. *See Hay v. Waldron,* 834 F.2d 481, 484 (5th Cir.1987) (citing cases). In determining whether a federal district court abused its discretion in this regard, this court must review the district court's rulings in light of four prerequisites which we require that a plaintiff show to obtain preliminary injunctive relief:

> "(1) a substantial likelihood of success on the merits;
>
> (2) a substantial threat of irreparable injury if the injunction is not granted;
>
> (3) an evaluation that the threatened injury to the plaintiff outweighs the threatened injury the injunction may cause the defendant; and
>
> (4) a determination that the injunction does not disserve public interest."

*Id.* (quoting *Lindsay v. City of San Antonio,* 821 F.2d 1103, 1107 (5th Cir.1987)). Because each prerequisite presents a mixed question of law and fact, this court must uphold the district court's subsidiary fact findings unless clearly erroneous; conclusions of law and the ultimate application of the law to the facts, however, are freely reviewable. *Id.* at 485.

By combining the standards for determining when a stay must be granted with

---

1. The defendants argue that Byrne's section 1983 action actually sounds in habeas and, therefore, that it is not properly before us because Byrne has failed to exhaust his state remedies. Since Byrne seeks only injunctive relief, another possibility is that Byrne's section 1983

claim is actually an *Ex Parte Young* suit to enjoin a state official from enforcing an unconstitutional state statute. *See Brennan v. Stewart,* 834 F.2d 1248, 1251–53 (5th Cir.1988). In view of the result we reach, we do not decide which, if either, characterization is proper.

the standards for determining when an injunction is appropriate, the ultimate focus of our inquiry in this case becomes apparent: Byrne is entitled to a stay only if it is probable that he can prove the district court abused its discretion in not granting the preliminary injunction; Byrne can prove the district court abused its discretion only by showing that it is probable that he will succeed in proving the constitutional deprivations he alleged in his section 1983 action, or that his section 1983 challenge presents a serious legal question. Our task, therefore, is to evaluate the viability of Byrne's section 1983 claims.

Each of Byrne's constitutional claims is premised on the same argument: that his rights under the federal statute are unconstitutionally limited by the Louisiana statute. Byrne has no constitutional claims, therefore, unless the Louisiana statute (which insists that Byrne be executed between thirty and forty-five days after his stay of execution was lifted) limits the federal statute (which permits Byrne to petition for certiorari) in a way which deprives Byrne of some right which the federal statute guarantees. In its memorandum, the district court evaluated each alleged constitutional defect from which Byrne claims the Louisiana statute suffers; the district court did so because, essentially, the court gave Byrne the benefit of assuming that the "right" which he says the federal statute creates and the Louisiana statute encumbers is as Byrne claims it is. We, in contrast, examine the federal statute more closely and conclude that it does not create a "right" upon which the Louisiana statute infringes; therefore, we find it unnecessary to address Byrne's constitutional challenges individually.

Section 2101(c) of Title 28 states, in pertinent part, that "any writ of certiorari intended to bring any judgment or decree in a civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within ninety days after the entry of such judgment or decree." Based on this single sentence, Byrne argues that the State of Louisiana cannot constitutionally execute Byrne until the ninety days in which he can petition for certiorari have passed. Byrne reads section 2101(c), therefore, as giving any party who can petition for certiorari both (1) an absolute entitlement to ninety days in which to file the petition and (2) the ability to file unencumbered by any attempt to execute the judgment for which review is sought. We cannot, however, agree that section 2101(c), to the extent it creates a right at all, creates one with the characteristics which Byrne ascribes to it.

First of all, section 2101(c) does not fix ninety days as the minimum time which a party wishing to petition for certiorari must be given. Instead, by stating that the petition must be filed "within ninety days," section 2101(c) simply fixes ninety days as the maximum time a party may wait, without asking for permission from the Court, before filing its petition. Second, the section does not suggest that a judgment rendered against a party petitioning for certiorari may not be executed during the time in which the petition may be filed. In fact, an examination of section 2101(f) suggests the untenability of reading section 2101(c) as Byrne would have us read it. According to subsection (f):

> In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court....

28 U.S.C. § 2101(f). We read section 2101(f) as contemplating that a judgment may be executed at any time after the judgment has been filed and, because the execution might occur during the certiorari process, as providing a petitioner with a method by which to stop it. Any "right" which section 2101 creates for persons petitioning for certiorari, therefore, is much more narrow than Byrne describes it. It is, at most, a right to petition for certiorari which must be exercised within ninety days and a right to a procedure through which execution of a judgment may, if the procedure is utilized, be halted during the certiorari process.

In his section 1983 action, therefore, Byrne has mischaracterized the federal statute. When that statute is correctly understood, it becomes apparent that the Louisiana statute simply does not affect any "right" which the federal statute confers. The federal statute, with or without the Louisiana statute, (1) limits Byrne to no more than ninety days in which to file for certiorari and (2) permits Byrne to ask the United States Supreme Court for a stay to prevent the State of Louisiana from executing him while he petitions for certiorari. The premise on which Byrne has based his section 1983 claims—that the Louisiana statute limits the rights which the federal statute confers upon Byrne—is, therefore, simply false. And because the premise on which Byrne has based his section 1983 claims is false, the claims themselves collapse. Consequently, Bryne cannot prevail on his section 1983 claims, was not entitled to a preliminary injunction in the district court, and is not entitled to a stay of execution from this court.

### III.

For the above described reasons, Byrne's application for a stay of execution pending final disposition of his appeal from the district court's decision to deny his request for a preliminary injunction is DENIED. The mandate shall issue immediately.