United States Court of Appeals
Fifth Circuit

**F I L E D**

May 9, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 04-70045

_____

SCOTT LOUIS PANETTI,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS
DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas

_____

Before HIGGINBOTHAM, GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Scott Louis Panetti was convicted of capital murder in the state court of Texas and sentenced to death. Panetti argues that he is presently incompetent to be executed. Based on a Certificate of Appealability issued by the district court, Panetti appeals the district court's denial of federal habeas relief.

I

Panetti has been sentenced to death in Texas state court for murdering his wife's parents. Shortly before his scheduled execution date, he petitioned the state court for a determination of his competency to be executed. The state habeas court appointed two mental health experts: Mary Anderson, a psychiatrist, and George Parker, a clinical psychologist. Anderson and Parker filed a joint report, concluding that Panetti knows that he will be executed and that he has the ability to understand the reason he is to be executed. Based on this report, but without holding a competency hearing, the state habeas court held that Panetti was competent to be executed.

Panetti petitioned for a writ of habeas corpus in federal court. The district court held that the state court's failure to hold a competency hearing at which Panetti could present evidence was contrary to *Ford v. Wainwright*, 477 U.S. 399 (1986). On that basis, the district court held an evidentiary hearing and declined to defer to the state court's finding of competency. Panetti presented the testimony of four expert witnesses: Mary Alice Conroy, a clinical and forensic psychologist; Susana Rosin, a clinical psychologist; Seth Silverman, a psychiatrist; and Mark Cunningham, a clinical and forensic psychologist. The State presented Parker and Anderson's expert testimony, as well as three fact witnesses who had observed Panetti during his period of incarceration.

The district court found that Panetti suffered from "some form of mental illness," which some of the doctors diagnosed as schizoaffective disorder. *Panetti v. Dretke*, 401 F. Supp.2d 702, 707 (W.D.Tex. 2004). Although he has the "cognitive functionality to communicate coherently much of the time," *id.* at 708, he suffers from "grandiosity and a delusional belief system in which he believes himself to be persecuted for his religious activities and beliefs," *id.* at 707. In particular, Panetti told

2

the doctors who interviewed him that he believes the State is "in league with the forces of evil to prevent him from preaching the Gospel." *Id.* at 709. Nevertheless, the district court found based on the testimony of the experts that Panetti is aware that he will be executed, that he committed the murders for which he was convicted and sentenced to death, and that the "State's stated reason for executing him is that he committed two murders." *Id.* at 711. On this basis, the district court held that Panetti was competent to be executed. *Id.*

II

In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo. Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005). The district court in this case declined to apply the deferential standard of review ordinarily required by the Anti-terrorism and Effective Death Penalty Act ("AEDPA") because the state court failed to hold an evidentiary hearing as contemplated by *Ford v. Wainwright,* 477 U.S. 399 (1986). Because we affirm the judgment of the district court, we need not decide whether this was error.[1]

---

[1] The respondent relies on *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001), in which we held that "a full and fair hearing is not a prerequisite to the operation of AEDPA's deferential scheme." Accordingly, he argues that the state court's finding that Panetti is competent is entitled to deference even though it may have been made without a hearing. Panetti relies on *Ford v. Wainwright*, 477 U.S. 399 (1986), a pre-AEDPA case in which a plurality of the Supreme Court stated

> any procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate. "[T]he minimum assurance that the life-and-death guess will be a truly informed guess requires respect for the basic ingredient of due process, namely, an opportunity to be allowed to substantiate a claim before it is rejected."

*Id.* at 414 (quoting *Solesbee v. Balkcom*, 339 U.S. 9, 23 (1950) (Frankfurter, J., dissenting)). Justice O'Connor, joined by Justice White concurred, stating that due process required providing such a prisoner the opportunity to be heard. *Id.* at 429-30 (O'Connor, J., concurring).

3

Panetti argues that the district court employed an erroneous legal standard in evaluating whether he was competent to be executed. The district court held that it is sufficient that Panetti knows: 1) that he committed two murders; 2) that he will be executed; and 3) that the reason the state has given for that execution is his commission of those murders. Panetti argues that the Eighth Amendment forbids the execution of a prisoner who lacks a rational understanding of the State's reason for the execution. Panetti contends that this understanding is lacking in his case because he believes that, although the State's purported reason for the execution is his past crimes, the State's real motivation is to punish him for preaching the Gospel. Panetti argues that this rule is compelled by *Ford v. Wainwright,* 477 U.S. 399 (1986).

In *Ford*, the Supreme Court held that Florida's procedure by which the Governor determined a prisoner's competency in an *ex parte* proceeding violated due process. The standard employed under Florida's statute was whether the defendant had "the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him." *Id*. at 403-04 (quoting FLA. STAT. § 922.07(2)). A psychiatrist who had interviewed Ford testified that he had "no understanding of why he was being executed, made no connection between the homicide of which he had been convicted and the death penalty, and indeed seriously believed that he would not be executed because he owned the prisons and could control the Governor through his mind waves." *Id.* at 403. A majority of the Court held that the Eighth Amendment barred executing the insane and that Florida's *ex parte* procedure violated due process. A four member plurality stated that, "It is no less abhorrent today than it has been for centuries to exact in penance the life of one whose mental illness prevents him from comprehending the reasons for the penalty or its implications." *Id.* at 417. The plurality based its statement on the lack of "retributive value [in] executing a person who has no

4

comprehension of why he has been singled out and stripped of his fundamental right to life" and "the natural abhorrence civilized societies feel at killing one who has no capacity to come to grips with his own conscience or deity." *Id*. at 409. The Court remanded for a *de novo* evidentiary hearing. *Id.* at 418. The majority did not, however, address what competency standard the Eighth Amendment required.

Justice Powell, believing that the plurality's exposition of the appropriate standard was inadequate, wrote a concurring opinion. After surveying the historical authorities, Justice Powell wrote:

> A number of States have more rigorous standards, but none disputes the need to require that those who are executed know the fact of their impending execution and the reason for it.
>
> Such a standard appropriately defines the kind of mental deficiency that should trigger the Eighth Amendment prohibition. If the defendant perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied. And only if the defendant is aware that his death is approaching can he prepare himself for his passing. Accordingly, I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it.

*Id.* at 421-22 (Powell, J., concurring) (footnote omitted).[2] Justice Powell believed that Ford was incompetent under this standard because he did not actually believe that he would be executed. *Id.* at 422 (Powell, J., concurring). We subsequently adopted Justice Powell's concurrence as the correct standard. *Lowenfield v. Butler*, 843 F.2d 183, 187 (5th Cir. 1988).

The district court in this case relied on *Barnard v. Collins*, 13 F.3d 871 (5th Cir. 1994), a case nearly identical to the one at bar. Barnard sought a certificate of probable cause on his *Ford* claim. *Id*. at 875. Barnard, like Panetti, suffered from paranoid delusions that his execution was the result

___

[2] A majority of the court recited Justice Powell's position approvingly in *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), for the proposition that a person "who is 'unaware of the punishment they are about to suffer and why they are to suffer it' cannot be executed." *Id.* at 333 (quoting *Ford*, 477 U.S. at 422 (Powell, J., concurring)).

of a conspiracy against him and not his crimes. As the state court noted:

> [Barnard] comprehends the *nature, pendency, and purpose of his execution*. [Barnard] knows that he was found guilty of killing a young boy in a robbery in Galveston County and that *his pending execution was because he had been found guilty of that crime*. He knew of the date of his scheduled execution and that it would be lethal injection by use of an intravenous injection. [Barnard's] experts do not establish that he is unaware of the fact of or the reason for his impending execution, but rather that his perception of the reason for his conviction and pending execution is at times distorted by a delusional system in which he attributes anything negative that happens to him to a conspiracy of Asians, Jews, Blacks, homosexuals, and the Mafia (emphasis added).

*Id.* at 876 (quoting state court decision). We held that because the state court found that Barnard "knew that he was going to be executed and why he was going to be executed" the *Ford* standard had been satisfied. *Id.* at 877.[3] The district court's findings in this case are sufficient under *Barnard* to establish Panetti's competency to be executed, and Panetti does not seriously contend otherwise.

Panetti nevertheless argues that *Barnard* is inconsistent with our prior decisions in *Johnson v. Cabana*, 818 F.2d 333 (5th Cir.1987), *Lowenfield v. Butler*, 843 F.2d 183 (5th Cir. 1988), and *Garrett v. Collins*, 951 F.2d 57 (5th Cir. 1992), and with Justice Powell's concurrence in *Ford*. We disagree. One panel of this court is generally powerless to overrule the previous decision of another panel. Although we acknowledge that an exception to this rule arises where two panel opinions are in conflict, *Harvey v. Blake*, 913 F.2d 226, 228 n.2 (5th Cir. 1990), the holdings of our cases are not in conflict.

*Barnard* is consistent with Justice Powell's concurrence in *Ford*. Justice Powell stated, "I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Ford*, 477 U.S. at 422 (Powell,

---

[3] In a subsequent case, this court held that where a prisoner "testified that he knew the date scheduled for his execution, the date of the offense for which he was on death row, that he was sentenced to die for murdering Larry Faircloth, and that the murder was alleged to have occurred during the course of a burglary," he was competent to be executed. *Fearance v. Scott*, 56 F.3d 633, 640 (5th Cir. 1995).

J., concurring). Justice Powell did not state that a prisoner must "rationally understand" the reason for his execution, only that he must be "aware" of it.

This court first interpreted the "awareness" component of *Ford* in *Johnson v. Cabana*, 818 F.2d 333 (5th Cir.1987). The issue in *Johnson* was whether the Mississippi state court erred in declining to hold an evidentiary hearing on Johnson's *Ford* claim. Johnson had submitted to the state court evidence that he suffered from various psychological difficulties including amnesia, brain damage, "brain dysfunction," organic brain syndrome, and alcohol dependency, and that he heard voices when he was a child. *Id.* at 337-39. The state court had held that Johnson had not made a sufficient threshold showing that would entitle him to a full hearing. *Id.* at 339. In making that determination, the state court employed a substantially more stringent definition of competency than *Ford* required. *Id.* at 339. Mississippi deemed a prisoner incompetent for execution if he did not have sufficient intelligence to understand: 1) the nature of the proceedings against him; 2) the crime of conviction; 3) the purpose of the punishment; 4) his impending fate; or 5) any fact that might exist that would render his punishment unjust or unlawful. *Id.* (citing MISS. CODE ANN. § 99-19-57(2) (Supp. 1986)). This court held that Johnson's evidence as to whether he met this standard was equivocal. *Id.* at 340. Accordingly, the failure to hold a full, trial-like hearing did not violate due process. *Id.*

Panetti makes much of *Johnson*'s discussion of the *Ford* standard for competency. *Johnson* did state that in *Ford*, "the Supreme Court held that a defendant who could not perceive the connection between his crime and punishment should not be executed." *Id.* at 336. But our interpretation of *Ford*'s substantive competency standard was dicta because as noted, Mississippi's standard was more prisoner-friendly than the Eighth Amendment requires. The issue in *Johnson* was,

7

given the Mississippi standard, whether Johnson had a due process right to a full hearing. *See id.* at 340 ("We therefore find that constitutional due process was satisfied by the determination of the Mississippi Supreme Court that its statutory threshold had not been reached is entitled to the presumption of correctness provided by [former] 28 U.S.C. § 2254(d)."). The constitutional standard for competency to be executed was simply not at issue in *Johnson*, much less the highly unusual factual scenario in this case. Because Johnson had failed to make a threshold showing under the Mississippi standard, the standard applied by the district court in this case, or the standard that Panetti advocates, *Johnson* did not resolve the issue in this appeal.

We next addressed *Ford* in *Lowenfield v. Butler*, 843 F.2d 183 (5th Cir. 1988), which like *Johnson*, concerned whether the petitioner had made a substantial threshold showing to require a full hearing in state court. According to *Lowenfield*, the *Ford* plurality stated that a prisoner's competency to be executed depends on whether he " 'comprehends the nature of the penalty' and whether the prisoner's mental illness 'prevents him from comprehending the reasons for the penalty or its implications.' " *Id.* at 187 (quoting *Ford*, 477 U.S. at 417). *Lowenfield* then quoted Justice Powell's concurrence for the proposition that the Eighth Amendment forbids the execution of "those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* (quoting *Ford*, 477 U.S. at 422 (Powell, J., concurring)). Lowenfield's evidence consisted only of a psychologist's opinion that he was a paranoid schizophrenic. *Id.* at 187. By itself, this fell "woefully short of a finding that Lowenfield [was] so deranged that he [was] unaware that he [was] about to be put to death as a result of his earlier conviction and sentence for murder." *Id.* Accordingly, we held that Lowenfield had failed to meet the substantial threshold showing required to necessitate a full hearing. *Id.* at 187-88.

Despite Panetti's reliance on *Lowenfield,* the case is not dispositive. Mere evidence of schizophrenia would not establish that a prisoner was incompetent under either the test that Panetti advocates or the test applied by the district court. *Lowenfield* therefore did not address or resolve whether competency requires a rational understanding of the reason for the execution.

Panetti relies last on *Garrett v. Collins*, 951 F.2d 57 (5th Cir. 1992). *Garrett* concerned an appeal from a stay of execution. Garrett contended that his belief that "his dead aunt [would] protect him from the effects of the sedative and toxic agents used" during lethal injection rendered him incompetent. *Id.* at 58. Garrett's expert witness testified, however, that his client knew that it was possible for him to die as a result of the State's efforts. *Id.* at 59. We held that, so long as Garrett "(1) understands the nature of the proceedings against him and (2) understands that the state is seeking to execute him and the reasons the state seeks this penalty," he is competent to be executed. *Id.* at 58. That Garrett had some hope that his aunt would save him from death did not render him incompetent. *Id.* at 59. In *Garrett*, we did not address the arguments Panetti raises in this appeal. Garrett solely argued that he lacked an understanding of the nature of the death penalty. He did not contend, nor did we decide what it means for a prisoner to be unaware of the punishment or the reason for it. Because we hold that "awareness," as that term is used in *Ford*, is not necessarily synonymous with "rational understanding," as argued by Panetti, we conclude that the district court's findings are sufficient to establish that Panetti is competent to be executed. *See Barnard v. Collins*, 13 F.3d 871 (5th Cir. 1994).

For these reasons, we AFFIRM the judgment of the district court.